# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
Filed: June 30, 2016

| | | |
|---|---|---|
| * * * * * * * * * * * * | | UNPUBLISHED |
| LESLIE LORD and RANDALL MAGNUSKI, legal representative of a deceased minor child, C.L, | * * * * | No. 12-255V |
| Petitioners, | * * | Chief Special Master Dorsey |
| | * | Sudden Infant Death Syndrome |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * * * | ("SIDS"); Attorneys' Fees and Costs; Unnecessary Billing By Multiple Attorneys; Excessive Fees |
| Respondent. | * | and Costs. |
| * * * * * * * * * * * * | | |

Joseph Pepper, Conway, Homer & Chin-Caplan, Boston, MA, for petitioners.
Jennifer Reynaud, United States. Department of Justice, Washington, DC, for respondent.

## DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

The undersigned issued a decision denying entitlement in the above captioned case on February 9, 2016. Decision dated Feb. 9, 2016 (ECF No. 89). On May 11, 2016, petitioners filed an Application for Attorneys' Fees and Costs. Petitioners' Application ("Pet'rs' App.") dated May 11, 2016 (ECF No. 93). Petitioners request a total of $141,528.73 in attorneys' fees and costs. Id. For the reasons set forth below, the undersigned grants petitioners' motion and awards a total of $127,303.37 in attorneys' fees and costs.

### I.     Procedural History

On April 18, 2012, Leslie Lord and Randall Magnuski ("petitioners") filed a petition in the National Vaccine Injury Compensation Program[2] on behalf of their deceased minor child,

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this ruling on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). As provided by Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended,

C.L.  See 42 U.S.C. §§ 300aa-1 to -34 (2012).  Petitioners alleged that the Hepatitis B, Pentacel, Prevnar, and Rotateq vaccinations that C.L. received on May 11, 2011, resulted in his death on May 13, 2011.  Petition at Preamble.  From the filing of the petition until December 2012, petitioners were represented by Mr. Michael Bottaro of the Bottaro Law Firm, LLC.  On December 3, 2012, petitioners filed a Motion to Substitute Attorney Ronald Homer in place of Mr. Bottaro.  Motion to Substitute dated December 3, 2012 (ECF No. 9).  The motion was granted the same day, and Conway, Homer and Chin-Caplan ("CHCC") has represented petitioners since that date.

On February 8, 2013, petitioners filed an expert report from Dr. Douglas Miller, along with medical literature referenced in his report.  On February 11, 2013, the case was transferred to the undersigned.  On May 28, 2013, respondent filed an expert report from Dr. Hart Lidov.  On August 8, 2013, respondent filed an expert report from Dr. Christine McCusker and a Rule 4(c) Report recommending against compensation.

After failed attempts to settle the case in late 2013, petitioners filed an expert report from Dr. James Oleske on December 11, 2013, and respondent filed a supplemental report from Dr. McCusker on February 10, 2014.  An entitlement hearing was held on July 29-30, 2015, in Washington, DC.  During the hearing, only one of petitioners' experts, Dr. Miller, testified.  Dr. Oleske did not testify.

Petitioners filed a motion for interim fees and costs on September 18, 2015, requesting $1,224.50 to cover the cost of obtaining a hearing transcript.  The undersigned awarded interim costs in the requested amount on October 13, 2015.  Decision dated October 13, 2015 (ECF No. 81).  On February 9, 2016, the undersigned issued a decision denying entitlement.

On May 11, 2016, petitioner filed an application for fees and costs requesting $27,930.00 in attorneys' fees and $2,642.40 in costs for the Bottaro Law Firm, LLC, and $82,368.60 in attorneys' fees and $27,610.73 in costs for CHCC.  Pet'rs' App. at 1.  Respondent filed a response outlining her general objections on May 31, 2016.  Respondent's Response ("Resp's Resp.") dated May 31, 2016 (ECF No. 95).  Respondent stated her belief that a reasonable amount of fees and costs in the case would be somewhere between $70,000.00 to $80,000.00. [3]  Id. at 3.  Respondent stated that she "no longer has sufficient resources to provide detailed objections to requests for attorneys' fees and costs," and left the appropriate award amount to the undersigned's discretion.  Id.  at n. 2.

Petitioners filed a reply to respondent's response to their motion for attorneys' fees and costs on June 17, 2016.  Pet'rs' Reply dated June 17, 2016 (ECF No. 98).  Petitioners also filed a Supplemental Application for Attorneys' Fees in the amount of $995.00.  Pet'rs' Supplemental

---

42 U.S.C. §§ 300aa-1 to -34 (2012) ("Vaccine Act" or "the Act").  All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

[3] In support of this assertion, respondent cited Sexton v. Sec'y of Health & Human Servs., No. 99-453V, 2015 WL 7717209 (Fed. Cl. Spec. Mstr. Nov. 9, 2015) (awarding $60,119.78 in attorneys' fees and costs in a SIDS case with the same experts which settled prior to hearing).  Resp's Resp. at 3.

Application ("Supp. App.") dated June 17, 2016 (ECF No. 99). Petitioners request a total of $141,528.73 in fees and costs.

This matter is now ripe for adjudication.

## II. Discussion

Under the Vaccine Act, the special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. 42 U.S.C. § 300aa-15(3)(1). When compensation is not awarded, the special master "may" award reasonable attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Id. at §15(e)(1). Respondent has not objected to petitioners' application for fees and costs on the basis of a lack of good faith or reasonable basis. The undersigned finds that petitioners brought their petition in good faith and that a reasonable basis existed.

### a. Work Performed by the Bottaro Law Firm, LLC

#### i. Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Human Servs., 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond. See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

### 1. Hourly Rate

Petitioners request a rate of $300.00 per hour for work performed by attorney Michael Bottaro. Pet'rs' App., Tab C, at 9. Mr. Bottaro billed 93.10 hours of work from June 14, 2011 to November 28, 2012, for which he requests $27,930.00. Id. This was Mr. Bottaro's first case in the Program, and he has not filed any Program cases since. Petitioners did not provide any additional information to support Mr. Bottaro's hourly rate, and respondent did not object to an hourly rate of $300.00.

In considering a reasonable hourly rate for Mr. Bottaro, the undersigned looks to other attorneys in the Program with similar experience. It appears that Mr. Bottaro has been practicing law in Providence, Rhode Island, for approximately 15 years, and he classifies himself as a personal injury attorney.[4] Other Program attorneys with similar levels of experience have received anywhere from $250.00 to $300.00 per hour. In O'Neill v. Sec'y of Health & Human Servs., No. 08-243V, 2015 WL 2399211 (Fed. Cl. Spec. Mstr. Apr. 28, 2015), Ms. Jennifer Maglio, an attorney in Sarasota, Florida, received $275.00 per hour for work performed in 2008-2010, and $300.00 per hour for work performed in 2011-2013. Id. at *5. At the time, Ms. Maglio had been an attorney for 17 years but had less than one year of experience in the Program.

For these reasons, the undersigned finds that $300.00 per hour is a reasonable rate for Mr. Bottaro.

### 2. Excessive Time

From the billing record offered in support of petitioners' fee application, it appears that Mr. Bottaro classified himself as "co-counsel" with the attorneys at CHCC. See Pet'rs' App, Tab C, at 1. A referring attorney who performs no direct work in the litigating of a Vaccine Court petition can still obtain a fee award. See, e.g. Bell v. Sec'y of Health & Human Servs., No. 07-454V, 2008 WL 4657081, at *1 (Fed. Cl. Spec. Mstr. Oct. 2, 2008); Hussey v. Sec'y of Health & Human Servs., No. 89-69V, 1990 WL 293391 at *3-4 (Fed. Cl. Spec. Mstr. June 27, 1990). However, the reasonableness of a referring attorney's pre-filing activity is subject to the same standard that governs the fee requests of the attorneys who actually litigated the case. See, e.g., Farrar v. Sec'y of Health & Human Servs., No. 90-1167V, 1992 WL 336502, at *3 (Fed. Cl. Spec. Mstr. Nov. 2, 1992). Furthermore, the requested fees of referring attorneys have been reduced where they appear excessive, especially where the referring attorney's role in the case diminished after its filing. See e.g., Haley v. Sec'y of Health & Human Servs., No. 90-3842, 1992 WL 368003, at *4 (Fed. Cl. Spec. Mstr. Nov. 20, 1992) (referring attorney's time reduced from 102.5 hours to 28.6 hours where attorney worked on matter for only four months before referral and did not participate in subsequent status conferences or entitlement hearing); Hussey, 1990 WL 293391, at *5 (reducing requested fees of referring attorneys from $13,973.47 to $2,600.00, a reduction of over 80 percent). The undersigned thus finds it necessary to evaluate

---

[4] Petitioners did not provide any information about Mr. Bottaro's work or his practice. The undersigned obtained this information from Mr. Bottaro's publicly available website. See "Bottaro Law Firm," http://bottarolaw.com/ (last visited June 30, 2016).

whether Mr. Bottaro's pre-filing work was reasonable, necessary, or duplicative of other work performed in the case by CHCC.

After considering petitioners' fee application as a whole, the undersigned finds that some of Mr. Bottaro's time was not reasonable. Mr. Bottaro's billing records appear to request fees for time he spent familiarizing himself with the Program. For example, on June 21, 2011, Mr. Bottaro billed 2.8 hours for "review[ing] documents provided by family [and] research[ing] vaccine injury program." Pet'rs' App., Tab C, at 9. On July 6, 2011, he billed 1.5 hours for "medical research [on] [v]accine injuries and SID[S] – Vaccine Injury Miller book." Id. at 8. On November 8, 2011, he billed 2.5 hours, in part for continuing to draft his application for admission to the Court of Federal Claims. Id. at 6. On January 10, 2012, Mr. Bottaro billed .2 hours for a telephone call with the Court of Federal Claims regarding attorney admission and an email to "potential co-counsel." Id. at 5. On January 26, 2012, Mr. Bottaro spent two hours "review[ing] admission documents from [the Court]" and performing "legal research [regarding] recovery of expert costs." Id.

The undersigned finds that Mr. Bottaro should not be compensated for his professional development concerning the Vaccine Program and its applicable rules and case law, especially when the matter was later referred to attorneys at CHCC, who have demonstrated expertise in the Vaccine Program. It is well established that time spent learning about the Vaccine Program is not compensable. See, e.g. Matthews v. Sec'y of Health & Human Servs., No. 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016); Calise v. Secretary of Health & Human Servs., No. 08–865V, 2011 WL 2444810, at *5 (Fed. Cl. Spec. Mstr. June 13, 2011) (reducing petitioner's counsel's billings for "research into the elementary principles of vaccine litigation," noting, "basic education [is] not compensable under the Program."); Carter v. Sec'y of Health & Human Servs., No. 04-1500V, 2007 WL 2241877 (Fed. Cl. Spec. Mstr. July 13, 2007) ("an inexperienced attorney may not ethically bill his client to learn about an area of the law in which he is unfamiliar. If an attorney may not bill his client for this task, the attorney may also not bill the Program for this task."). Thus, the undersigned will not compensate Mr. Bottaro for the time he spent familiarizing himself with the Vaccine Program and deducts a total of 9 billable hours for these tasks.

The undersigned also finds that some of Mr. Bottaro's time was duplicative of work performed by CHCC. Mr. Bottaro spent numerous hours discussing the case with attorneys Kevin Conway and Sylvia Chin-Caplan of CHCC as well as Attorney Faherty and Attorney Gallagher.[5] For example, in every billing entry between November 27, 2012, and October 23, 2012, Mr. Bottaro billed time for consulting with Ms. Chin-Caplan or co-counsel. Pet'rs' App., Tab C, at 1-2. Mr. Bottaro billed a total of 3.1 hours between these dates, and this time included emailing CHCC regarding "transitioning file," finalizing a letter to Ms. Chin-Caplan about a to-do list for the case, and emailing Ms. Chin-Caplan regarding the status of the case. Id. at 1.

Because time spent consulting with other attorneys is duplicative, the undersigned will reduce the following billing entries by one half: November 10, 2011, November 15, 2011, December 1, 2011, December 5, 2011, February 1, 2012, June 29, 2012, July 9, 2012, July 26,

---

[5] See, e.g., Pet'rs' App., Tab C, at 1-6.

5

2012, July 31, 2012, September 10, 2012, September 11, 2012, October 23, 2012, November 4, 2012, November 12, 2012, November 26, 2012, and November 27, 2012.[6]  Pet'rs' App., Tab C, at 1-6.  The undersigned reduces each of these billing entries by one half, deducting 9.75 hours.

The undersigned deducts a total of 18.75 hours from Mr. Bottaro's fee application, thus compensating him for 74.35 hours at a rate of $300.00 per hour for a total award of $22,305.00.

### ii. Costs

Petitioners request a total of $2,624.40 in costs for copying expenses, postage, expert retainer fees, medical records, filing fees, and costs associated with Mr. Bottaro's application to the Court of Federal Claims.  Pet'rs' App., Tab D, at 1.  The undersigned finds all of these costs reasonable with the exception of the $265.00 associated with joining the Court of Federal Claims, which is considered a general overhead cost and is thus not recoverable.  See Barnes v. Sec'y of Health & Human Servs., No. 90-1510V, 1992 WL 185708 (Fed. Cl. Spec. Mstr. July 16, 1992).  Thus, the undersigned reduces Mr. Bottaro's costs by $265.00 and awards him $2,359.40 in costs.

### b. Work Performed by Conway Homer & Chin-Caplan Attorneys

### i. Reasonable Attorneys' Fees

#### 1. Hourly Rates

The issue of an appropriate hourly rate for the attorneys, paralegals, and law clerks at Conway, Homer & Chin-Caplan ("CHCC") was recently ruled upon in McCulloch v. Sec'y of Health & Human Servs., No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).  The undersigned fully agrees with the McCulloch analysis regarding appropriate hourly rates for the attorneys, paralegals, and law clerks at CHCC and will use the same hourly rates used in that decision.  Those rates were utilized in both petitioners' Application for Attorneys' Fees and Costs and petitioners' Supplemental Application for Attorneys' Fees.  Using the McCulloch rate, the total amount of attorneys' fees requested by CHCC is $83,363.60.

#### 2. Unnecessary Time Billed by Multiple Attorneys

The undersigned has previously found it reasonable to reduce the fees paid to CHCC due to duplicative billing.  See Ericzon v. Sec'y of Health & Human Servs., No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reducing CHCC's overall fee award by 10 percent due to excessive and duplicative billing).  The undersigned and other special masters have previously noted the inefficiency that results when multiple attorneys work on one case.  CHCC often employs such a business model, but special masters have also reduced fees for other attorneys and firms.  See Sabella, 86 Fed. Cl. at 214-15 (affirming the special master's reduction

---

[6] In each of these billing entries, Mr. Bottaro spent all or part of his time consulting with other attorneys about the case.  The undersigned also notes that the billing entries from November 8, 2011, and January 10, 2012, were also duplicative.  However, these billing entries were already reduced for being unreasonable and were not counted twice.

of fees for overstaffing where three attorneys from two different firms worked on a case together).

The undersigned finds some of petitioners' requested fees unreasonable, unnecessary, and duplicative. At least five CHCC attorneys worked on petitioners' case, including Mr. Pepper, Mr. Homer, Ms. Chin-Caplan, Ms. Daniels, and Ms. Ciampolillo, in addition to law clerks and paralegals. See Pet'rs' App., Tab A. Petitioners have not provided a sufficient explanation as to why the involvement of this many attorneys in a single case is necessary.

CHCC also billed excessive amounts of time for intra-office communications, including meetings, telephone calls, and office memoranda. For example, Mr. Pepper, Ms. Ciampolillo, Ms. Chin Caplan, and paralegals all billed time for case meetings and other intra-office communication.[7] Mr. Pepper and Ms. Chin-Caplan, Mr. Pepper and the paralegals, and Mr. Pepper and the law clerks all billed time for the same meetings with each other. Id. Additionally, the attorneys at CHCC spent multiple hours drafting and reviewing memos to each other about the case.[8] Other special masters as well as the undersigned have found these practices unnecessarily duplicative. See Ercizon, 2016 WL 447770; Austin v. Sec'y of Health & Human Servs., No. 10-362V, 2013 WL 659574, at *14 (Fed. Cl. Spec. Mstr. Jan. 31, 2013) (Special Master Vowell deducted fees for excessive intra-office communication in a case where seven attorneys at CHCC billed for attending conferences and drafting memoranda about the case); Soto v. Sec'y of Health & Human Servs., No. 09-897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011) (Special Master Millman reduced CHCC's fees for intra-office communications and meetings); Carcamo v. Sec'y of Health & Human Servs., No. 97-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011) (Special Master Millman reduced fees when two attorneys at the Law Offices of Dale K. Galipo billed for the same meetings with a client).

The undersigned finds that the reviewing of documents by multiple attorneys also led to excessive billing in this case. Specifically, Mr. Homer billed time to review electronic filing notifications and orders.[9] In petitioners' application for fees, there are at least 59 entries, totaling 5.9 hours, in which Mr. Homer billed time to review orders and filings in petitioners' case. These 5.8 hours do not account for Mr. Homer's other billable time spent working on the case. While it is true that Mr. Homer is the attorney of record in petitioners' case, the primary attorneys working on the file must also review all Orders and pleadings so as to be informed of the status of the case and comply with deadlines. In order to properly prepare for drafting motions, status conferences, and client calls, it was undoubtedly necessary for the attorneys more closely involved in the case to review the filings and orders that Mr. Homer had already reviewed. Much of Mr. Homer's time billing for reviewing case filings is thus duplicative.[10]

---

[7] See Pet'rs' App., Tab A, at 2, 10-12, 14-20, 23, 24, 31-40, 42-45, 55.

[8] See Pet'rs' App., Tab A, at 3, 4, 9-16, 20, 21, 23-25, 27, 28, 30, 32-41, 43-45, 47, 48, 51-57.

[9] See Pet'rs' App., Tab A, at 4, 5, 8, 9-11, 14-19, 21-23, 25-30, 33, 34, 36, 38, 42, 46-55.

[10] The undersigned also notes that the justification for Mr. Homer's hourly billing rate of $400.00 per hour is his many years of experience with the Vaccine Program that have shaped his

This is also made clear by several entries which show that Mr. Homer and Mr. Pepper billed time for reviewing the same Orders.[11]

Petitioners also request fees for research and drafting performed by law clerks. Pet'rs' App., Tab A, at 11-13. Law clerks billed over 9 hours for case review and drafting of the amended petition, which was approximately 14 pages in length. Id.; see also Amended Petition dated May 23, 2013 (ECF No. 25). This work appears duplicative, as Mr. Pepper billed a total of 5.5 hours to "review and substantially edit amended petition drafted by law clerk." Pet'rs' App, Tab A. The undersigned thus find petitioners' request for over 15 hours of work on the amended petition excessive.

For all of these reasons, the undersigned will reduce petitioners' entire fee award by ten percent. The undersigned reduces petitioners' requested attorneys' fees by $8,336.36, and thus awards petitioners $75,027.24 in attorneys' fees for CHCC.

### ii. Costs

#### 1. Expert Fees

##### a. Dr. Douglas Miller

Petitioners request $17,000.00 for the expert services of Dr. Miller, who billed a total of 34 hours in this case at the rate of $500.00 per hour.[12] Pet'rs' App., Tab B, at 20-21. Petitioners do not state any reasons why Dr. Miller is entitled to such a rate, and respondent did not object to this rate. In Sexton v. Sec'y of Health & Human Servs., 99-453V, 2015 WL 7717209 (Fed. Cl. Spec. Mstr. Nov. 9, 2015), the undersigned found the rate of $500.00 per hour to be a reasonable hourly rate for Dr. Miller. Thus, the undersigned will award Dr. Miller $500.00 per hour for the 34 hours he spent working on the case. Dr. Miller filed a detailed invoice explaining the work he performed and the amount of time he spent, and the undersigned finds all of this time reasonable and will award petitioners $17,000.00 for the services of Dr. Miller.

##### b. Dr. James Oleske

Petitioners request reimbursement in the amount of $9,250.00 for the expert services of Dr. Oleske. Pet'rs' App., Tab B, at 23. Like Dr. Miller, Dr. Oleske also charged $500.00 per hour for his services. Id. Respondent did not object to the hourly rate of Dr. Oleske, but she did point out that Dr. Oleskse did not testify during the hearing. Resp's Resp. at 1. The undersigned finds the rate of $500.00 per hour a reasonable hourly rate for Dr. Oleske's services. See Sexton,

---

insight and judgment regarding vaccine cases. Mr. Homer is not using this insight and judgment when reviewing files and orders to track deadlines and assign tasks.

[11] See Pet'rs' App., Tab A, at 16, 21, 27, 28, 30, 36, 48-52.

[12] Petitioners explain that Mr. Bottaro's firm paid $1000.00 of the retainer fee, while CHCC paid for the remainder of Dr. Miller's bill. Therefore, Mr. Bottaro's firm will receive $1,000.00 of the total reimbursement awarded for Dr. Miller's costs.

2015 WL 7717209, at *4. Furthermore, although Dr. Oleske did not testify at the hearing, the undersigned does not view his expert costs as unreasonable and therefore will reimburse them.

### c. Other Costs

The undersigned finds that all other costs requested by petitioners, including costs with collecting and copying medical records, travel expenses, postage, and FedEx costs are reasonable. The undersigned thus awards petitioners $27,610.73 in attorneys' costs for CHCC.

### III. Conclusion

The undersigned finds an award of attorneys' fees and costs appropriate. In sum, she awards petitioners the following amount for attorneys' fees and costs:

#### a. Bottaro Law Firm, LLC

| | |
|---|---|
| Requested Attorneys' Fees: | $27,930.00 |
| Reductions: | $5,625.00 |
| Total Attorneys' Fees Awarded: | $22,305.00 |
| | |
| Requested Attorneys' Costs: | $2,624.40 |
| Reductions: | $265.00 |
| Total Costs Awarded: | $2,359.40 |

#### b. Conway, Homer, & Chin-Caplan, P.C.

i. Petitioners' Application for Attorneys' Fees and Costs:

| | |
|---|---|
| Requested Attorneys' Fees: | $82,368.60 |
| Supplemental Attorneys' Fees: | $995.00 |
| Reductions: | $8,336.36 |
| Total Attorneys' Fees Awarded: | $75,027.24 |
| | |
| Requested Attorneys' Costs: | $27,610.73 |
| Reductions: | $0.00 |
| Total Costs Awarded: | $27,610.73 |

**Accordingly, the Court awards:**

a. **$102,637.97**, representing attorneys' fees and costs. The award shall be in the form of a check made payable jointly to petitioners and Conway, Homer & Chin-Caplan, P.C.

b. **$24,665.40**, representing attorneys' fees and costs. The award shall be in the form of a check made payable jointly to petitioners and the Bottaro Law Firm, LLC.

In the absence of a motion for review filed pursuant to the RCFC Appendix B, the Clerk of Court is directed to enter judgment herewith.[13]

**IT IS SO ORDERED.**

s/Nora Beth Dorsey
Nora Beth Dorsey
Chief Special Master

---

[13] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each part, either separately or jointly, filing a notice renouncing the right to seek review.